WILLIAM S. JOHN *v.* EDGAR D. TURNER, *etc.*, *Exr.*, WILLIAM S. JOHN *and* THOMAS H. HUDSON, *Appellants*

(No. 8940)

Submitted September 13, 1939. Decided September 26, 1939.

*Frank Cox* and *William S. John,* for appellants.
*Donley & Hatfield, Robert T. Donley,* and *Frank P. Weaver,* for appellees.

RILEY, JUDGE:

In this partition suit of William S. John against Edgar D. Turner, in his own right and as executor of Jane Deyarmon Turner, deceased, and others, the plaintiff John and one of the defendants, Thomas H. Hudson, appeal from a decree of the Circuit Court of Monongalia County which, among other things, refuses partition to the defendant Hudson and awards partition to the plaintiff John of an 8.137-acre tract of coal as a separate tract, thereby denying appellants an opportunity to have their shares laid off together.

The pertinent parts of the record before us consist of a second amended bill of complaint; the separate answers of the defendant Turner in his own right and as executor; O. H. Gall, receiver of the Bank of The Monongahela Valley; St. Paul Coal Company and Thomas Hudson; the joint and separate answer of Luther A. Harr, as Commissioner of Banking of the Commonwealth of Pennsylvania, and as such receiver of the Citizens Title and Trust Company, an insolvent banking institution, Elizabeth B. Cooke, Elizabeth Cooke Smith, Clarence F. Smith, her husband, Jean V. Cooke, Mary Alice Cooke, his wife, Catherine V. King, in her own right and as executrix of the will of Austin King, deceased, Cyrus M. Murray and Irvin C. Murray, executors of the will of C. C. Murray, deceased; and the general replication to all of the answers except that of the defendant Hudson.

In the years 1902, 1903 and 1904, according to the allegations of the second amended bill of complaint, the de-

fendant, Edgar D. Turner, purchased twelve contiguous parcels of the Pittsburgh or River Vein of coal with mining rights appurtenant thereto, situate in Monongalia County, containing an area of 1116.48625 acres on the face of the deeds of conveyance. By subsequent deeds, the last mentioned defendant conveyed certain undivided interests in said parcels of coal and mining rights to various persons, including a 1,000,000/137,210,875 interest to T. J. McClernen, which, through intermediate transfers, was conveyed to the plaintiff, William S. John, by deed dated May 2, 1937, and a 30,950,000/137,210,875 interest to Jane Deyarmon Turner, under the name of Jennie D. Turner, by deed dated October 15, 1919. Thereafter, by separate deeds recorded in Monongalia County, the latter conveyed undivided moieties of her said interest in the parcels of coal as follows: three several 2,000,000/137,210,875 interests to Jean V. Cooke, Emma E. Shearer and Elizabeth Cooke Smith, respectively, and a 4,950,000/137,210,875 interest to William H. Cooke, which last mentioned interest, by mesne conveyances, became vested in the defendant, Luther A. Harr, Commissioner of Banking and receiver, as aforesaid.

The second amended bill further alleges that "Jennie Deyarmon Turner" died in the District of Columbia on June 3, 1927, seized and possessed of her remaining interest in said coal, which, by mathematical calculation, amounts to a 20,000,000/137,210,875 interest, leaving a last will and testament dated January 14, 1922, admitted to probate in the District of Columbia on December 22, 1927; that the said Edgar D. Turner, one of the three persons named therein as executors, was qualified as the sole executor thereof; that said will or an authenticated copy thereof was also probated in the County Court of Monongalia County, and the defendant Turner was appointed as sole ancillary executor. Said will provides for the sale by the executors of the testatrix' interest in said coal, and that the proceeds of the sale thereof shall be divided into four shares and distributed as follows: the income of 10/30 to testatrix' brother, John A. Cooke, dur-

ing his lifetime (now deceased), and at his death the principal to William H. Cooke, another brother; 10/30 to the said William H. Cooke; 3/30 to be divided among the children of testatrix' deceased sister, Elizabeth Shearer, and the fourth share, consisting of a 7/30 interest to be applied to the payment of debts, funeral expenses and costs of administration, with the provision that any residue thereof shall pass under the residuary clause of the will. Under the last mentioned clause, one-half of the residue of decedent's estate was given to William H. Cooke absolutely, and the remaining one-half thereof to him "to control and to give where it may be needed or as I shall direct in a letter I shall leave for him."

Hudson's interest in the coal property came to him, according to his answer, by virtue of a deed of trust of William H. Cooke and wife to William S. John, trustee, for said Hudson, dated July 17, 1930, and a subsequent deed dated April 1, 1937, whereby the trustee conveyed said interest to Hudson.

The decree complained of allotted to the parties having an undivided interest in the parcels of coal their respective shares, including "an undivided 1,000,000/137,-210,875ths, being equivalent to 8.137 acres," to William S. John, and "an undivided 20,000,000/137,210,875ths, being equivalent to 162.740 acres," to Edgar D. Turner, executor of the Turner will; appointed commissioners with instructions to partition a tract of 8.137 acres, if such can be conveniently made, to the plaintiff John. It further provides that if such partition can be conveniently made, the commissioners shall partition said coal and mining rights to the interested parties, and finally it overrules the appellants' motion that the said Edgar D. Turner, as executor, convey the legal title to the coal and mining rights of which Jane Deyarmon Turner died seized to the holders and owners of the equitable rights and title therein.

This case involves an appraisal of the will of Jane Deyarmon Turner. Counsel for the appellees say that there can be no partition because the Turner will worked

an equitable conversion, and that where real property held by co-owners is converted into money, there can be no partition until all of the parties elect to reconvert. The following cases are cited: *Bank of Ukiah v. Rice,* 143 Cal. 265, 76 Pac. 1020, 101 Am. St. Rep. 118; *Walling v. Scott,* 50 Ind. App. 23, 96 N. E. 481, 97 N. E. 388; *Cannon v. Unknown Heirs,* 175 Mo. App. 84, 157 S. W. 860; *Cahill v. Cahill,* 62 N. J. Eq. 157, 49 Atl. 809; *Mitchell v. Mitchell,* 137 App. Div. 15, 121 N. Y. S. 730; *Fritz v. Fritz,* 63 Hun 629, 17 N. Y. S. 800; *Knight v. Gregory,* 333 Ill. 643, 165 N. E. 208; *Deegan et al. v. Deegan et al.,* 247 App. Div. 340, 287 N. Y. S. 230; *Beecher et al. v. People et al.,* 124 Misc. 733, 209 N. Y. S. 193; *In re Suppes' Estate,* 322 Pa. 385, 185 Atl. 616; *Hull v. McCracken et al.* (Mo. App.), 53 S. W. (2d) 405. But appellants' counsel say that notwithstanding the will may have worked an equitable conversion, personal property may be partitioned in this state under the provisions of Code, 56-10-5 and 37-4-1. This argument is countered by the statement that the cases of *In re Suppes' Estate, supra,* and *Hull v. McCracken et al., supra,* were decided by the Supreme Courts of Pennsylvania and Missouri adversely to appellants' claim, although the statutes of those states specifically permitted the partition of personal property. See 2 Missouri Statutes Annot., section 1606; Purdon's Pennsylvania Statutes Annotated, section 1791.

Let us now look to the will itself to see whether or not it in fact provides for equitable conversion.

Paragraphs THIRD and FOURTH of the will read as follows:

> "THIRD. I hereby authorize and direct my executors as soon after my death as they deem it expedient and for the best interest of my estate so to do, to sell all my estate and interest in a certain tract of the Pittsburgh or nine foot seam of coal situate in Monongalia County, state of West Virginia, my undivided interest therein being equivalent to about two hundred and nine acres. They shall have authority to sell said coal in whole or in part and at either public or private

sale and upon such terms as they may deem advisable and they shall have authority to make, execute and deliver a proper deed or deeds to the purchaser or purchasers thereof without any obligation on the latter to be responsible for the application of the purchase money.

"FOURTH: The proceeds of the sale of said coal shall be divided into four portions or shares, to-wit: The first share shall be ten thirtieths, the second share ten thirtieths, and third share three thirtieths and the fourth share seven thirtieths —which shares I give, devise and bequeath as follows: "

Paragraph FOURTH provides for the division of the *proceeds of sale* of decedent's interest in the coal and not a division of such interest. The next paragraph directs the executor to invest a share of the proceeds for the benefit of decedent's brother, John A. Cooke, during his lifetime. Paragraph EIGHTH provides for the application of still another share to debts, funeral and administration expenses. None of which, we suggest, could be done without a sale of the property as provided by the will. Moreover, paragraph THIRD expressly authorizes and directs the executor to sell the decedent's interest in the coal. Thus, both impliedly and expressly, the will places in the defendant executor the duty to make sale and distribute the proceeds. The direction to do so is clear, explicit and mandatory. Testatrix' intention to convert the property into money would seem to be without question. That being so, the property, in this court of equity, is personal and not real. In *Carney* v. *Kain,* 40 W. Va. 758, 799, 23 S. E. 650, 652, this Court held: "The law is well settled that where a will expressly or by necessary implication directs land to be turned into money, and such conversion is necessary to carry out the special object of creating the fund, or the general scheme of distribution, equity will treat that which is directed to be done as already done, and treat the land, for purposes of devolution and the transfer of title, as already converted into personal estate." Then in *Brown* v. *Mil-*

*ler's Ex'rs.,* 45 W. Va. 211, 31 S. E. 956, a case in which the will did not expressly convey title to the executor, but simply directed sale, Judge Brannon said: "Where a will directs land to be sold and divided among legatees, it is, in equity, a conversion of land into money." See also the late case of *Peters* v. *Kanawha Banking & Trust Company,* 118 W. Va. 484, at p. 493, 191 S. E. 581, and numerous authorities cited therein at page 493. Where real estate is converted into personalty and directed to be sold under the provisions of a will, it cannot be partitioned over the objection of any party in interest. Such was this Court's holding in *Brown* v. *Miller's Ex'rs., supra.* We do not feel at liberty to depart therefrom.

Of course, a mere authority to sell or discretion to make sale is insufficient. See generally, 19 Am. Juris., pp. 1 to 11, inclusive. True, the executor here has discretion as to the time and manner of sale. Such discretion, however, in view of the mandatory provisions of the will, will not defeat conversion as of the time of testatrix' death. *Ropp* v. *Minor & als.,* 33 Gratt. (Va.) 97; *Commonwealth* v. *Martin's Executors and Devisees,* 5 Munf. (Va.) 117; *Carr* v. *Branch et al.,* 85 Va. 597, 8 S. E. 476; *Ford* v. *Ford,* 70 Wis. 19, 33 N. W. 188, 5 Am. St. Rep. 117; *Stagg, Executor, etc.* v. *Jackson et al.,* 1 Comstock's Reports (N. Y.) 206; *Grove et al.* v. *Willard et al.,* 280 Ill. 247, 117 N. E. 489. See generally, *Greenman* v. *McVey,* 126 Minn. 21, 147 N. W. 812, Ann. Cas. 1915D, 430, and note 434; 19 Am. Juris. 10, notes 8 and 10, and cases cited thereunder.

It follows that conversion took place at testatrix' death, and her beneficiaries got no present interest in the coal property itself. Under the will, they had nothing more nor less than the right against the executor to compel him to make sale and distribute the proceeds in the event of his dereliction in duty. And Hudson, standing as he does in privity to William H. Cooke, has no better right. Whatever right he has cannot be adjudicated in this suit, at least under the present state of the record.

The claim of plaintiff, William S. John, is also without merit. The court decreed to him a partition of his inter-

est in the property. He has no interest under the Turner will. No privity by contract or otherwise lies between him and Hudson. Not only does his assignment of error fall with Hudson's, but having been decreed partition as his second amended bill of complaint prays, he has suffered no prejudice. Therefore, he cannot complain. One cannot appeal successfully from a decree which does not prejudice him or which is in his favor. *Dunn's Ex'rs.* v. *Renick,* 40 W. Va. 349, 22 S. E. 66.

We therefore affirm the trial chancellor's decree.

*Affirmed.*